#25811, #25827-a-JKM

**2011 S.D. 68**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

\* \* \* \*

DONALD JACOBS,                                          Plaintiff and Appellee,

     v.

DAKOTA, MINNESOTA & EASTERN
RAILROAD CORPORATION, A
DELAWARE CORPORATION,                  Defendant and Appellant.

\* \* \* \*

APPEAL FROM THE CIRCUIT COURT OF
THE THIRD JUDICIAL CIRCUIT
BROOKINGS COUNTY, SOUTH DAKOTA

\* \* \* \*

HONORABLE DAVID R. GIENAPP
Judge

\* \* \* \*

RONALD A. PARSONS, JR. of
Johnson, Heidepriem & Abdallah, LLP
Sioux Falls, South Dakota

RICK A. RIBSTEIN of
McCann, Ribstein, & McCarty, PC
Brookings, South Dakota

GREGORY T. YAEGER of
Yaeger, Jungbauer & Barczak, PLC
Saint Paul, Minnesota                              Attorneys for plaintiff
                                                                  and appellee.

BRIAN J. DONAHOE
ONNA B. HOUCK
WILLIAM D. SIMS of
Cutler & Donahoe LLP                            Attorneys for defendant
Sioux Falls, South Dakota                      and appellant.

\* \* \* \*

ARGUED ON MAY 25, 2011

OPINION FILED **10/12/11**

MEIERHENRY, Retired Justice

[¶1.]     Donald Jacobs worked for Dakota, Minnesota, & Eastern Railroad Corporation (DM&E).  Jacobs was injured on the job when he fell on snow-covered ice.  Jacobs suffered severe injuries to his elbow and shoulder as a result.  He subsequently filed a personal injury claim under the Federal Employers' Liability Act (FELA), which permits suit against railroads for an employee's injury that "result[s] in whole or in part from [the railroad's] negligence."  45 U.S.C. § 51.  After a jury trial, the jury returned a verdict in Jacobs's favor.  The jury awarded $300,000 in damages.  DM&E appeals, raising several issues.  Jacobs raises one issue by notice of review.

[¶2.]     Jacobs's injury occurred on January 7, 2007, while performing his duties as a rail-car mechanic for DM&E in Huron, South Dakota.  His duties took him into the rail yard to check with the train crews for any mechanical problems.  He reached each crew by driving a vehicle over the graveled paths in the rail yard.  On the day of his injury, snow and ice had accumulated on the rail yard grounds.  Because of the snow and ice, Jacobs wore work-issued "ice cleats" over his boots.  Even with the ice cleats, he slipped and fell on a patch of snow-covered ice as he returned to his vehicle after talking to one of the crews.  The fall fractured his elbow and ultimately caused an injury to his shoulder.  Both his elbow and shoulder required surgery.  As a result of his injuries, Jacobs has permanent lifting restrictions.

[¶3.]     Jacobs filed suit against DM&E under FELA.  Jacobs alleged that DM&E's negligence caused his injuries.  The jury ultimately awarded Jacobs

$300,000. DM&E filed a motion for a judgment as a matter of law and alternatively moved for a new trial. The trial court denied both motions and ordered that interest be paid on the judgment, calculated from the day of the verdict. DM&E also filed a motion for a set-off of $16,086.06 for wage-continuation payments made to Jacobs as a form of short-term disability benefits. The trial court granted that motion.

[¶4.]    DM&E raises the following issues on appeal:

1.    Whether the trial court erred in allowing evidence of drainage problems and, if that evidence was admissible, erred in failing to enter a judgment as a matter of law.

2.    Whether the trial court abused its discretion in denying DM&E's motion for a new trial.

3.    Whether the trial court erred in ordering prejudgment interest from the time of the verdict until the entry of judgment.

[¶5.]    By notice of review, Jacobs raises the following issue on appeal:

4.    Whether DM&E was entitled to a set-off on the judgment.

**Analysis and Decision**

[¶6.]    **1.    Whether the trial court erred in allowing evidence of drainage problems and, if that evidence was admissible, erred in failing to enter a judgment as a matter of law.**

[¶7.]    DM&E presents two arguments under this issue. First, DM&E claims that the trial court erred by admitting photographs and testimony concerning water pooling and drainage in the rail yard. The photographs, which were taken months after Jacobs's accident, showed the area of his fall and other areas of the rail yard. Jacobs offered the photographs and accompanying testimony to show that the rail yard's poor drainage caused ice to form. DM&E claims that Jacobs unfairly used

the evidence to show that the poor drainage was "known to DM&E and caused ice to form, which was the basis for concluding that ice accumulation was foreseeable." DM&E questions the relevancy of the evidence and asserts that the "admission of this evidence was improper and unfairly prejudicial far beyond any probative value."[1]

[¶8.]     We review evidentiary rulings under the abuse of discretion standard. *Stockwell v. Stockwell*, 2010 S.D. 79, ¶ 42, 790 N.W.2d 52, 66.  An abuse of discretion occurs when the trial court's ruling is "clearly against reason and evidence."  *DFA Dairy Fin. Servs., L.P. v. Lawson Special Trust*, 2010 S.D. 34, ¶ 17, 781 N.W.2d 664, 669 (citation omitted).  Here, the photographs and testimony were relevant to show the rail yard's alleged drainage problems.  Even though DM&E may not agree with the evidence, it was able to cross examine and rebut it.  We find no abuse of discretion in admitting the photographs and testimony.

[¶9.]     As to the second argument under this issue, DM&E argues that it is entitled to a judgment as a matter of law on the issue of foreseeability.  Both parties agree that for Jacobs to prevail on his claim, DM&E must have foreseen the hazard that ice accumulation presented.  *See CSX Transp., Inc. v. McBride*, __ U.S. __, 131 S. Ct. 2630, 2634, 180 L. Ed. 2d 637 (5-4 decision) (citing *Gallick v. Baltimore & Ohio. R.R. Co.*, 372 U.S. 108, 117, 83 S. Ct. 659, 665, 9 L. Ed. 2d 618 (1963) (stating

---

1.     DM&E also argues that Jacobs's expert witness misinterpreted deposition testimony on which he based his conclusions.  DM&E contends that it objected to those misinterpreted portions of the deposition testimony.  But, by DM&E's own admissions, those objections were sustained.  Therefore it is unclear what relief DM&E seeks on appeal.

that "reasonable foreseeability of harm is an essential ingredient of [FELA] negligence")). DM&E contends that the trial court should have granted its motion for a judgment as a matter of law because Jacobs presented "no evidence" that it was foreseeable that ice would accumulate in the area of his accident. This Court reviews the denial of a motion for a judgment as a matter of law for an abuse of discretion. *See Cooper v. Rang*, 2011 S.D. 6, ¶ 4 n.1, 794 N.W.2d 757, 758 n.1. Further, this Court "view[s] the evidence and testimony in a light most favorable to the verdict." *Id.*

[¶10.] In its brief, DM&E argues that foreseeability is a prerequisite to concluding that an employer's negligence proximately caused an employee's injury. The United States Supreme Court recently addressed what an employee needs to prove under FELA to satisfy the proximate cause standard. *See McBride*, __ U.S. __, 131 S. Ct. at 2636-37.

[¶11.] *McBride*'s central holding reaffirmed the proximate cause standard pronounced in *Rogers v. Mo. Pac. R.R. Co.*, 352 U.S. 500, 77 S. Ct. 443, 1 L. Ed. 2d 493 (1957). In *Rogers*, the Court held that an employer was liable under FELA if the employer's "negligence . . . played *any part* at all" in bringing about the employee's injury. *McBride*, __ U.S. __, 131 S. Ct. at 2638 (citing *Rogers*, 352 U.S. at 508, 77 S. Ct. at 443) (emphasis added).[2] In addressing *Rogers'* "any part" standard, the *McBride* Court defined proximate cause:

---

2. In reaffirming the "any part" standard from *Rogers*, the *McBride* Court relied on the "statutory history and precedent on which *Rogers* drew":

(continued . . .)

> The term "proximate cause" is shorthand for a concept: Injuries have countless causes, and not all should give rise to legal liability. *See* W. Keeton, D. Dobbs, R. Keeton, & D. Owen, Prosser and Keeton on Law of Torts § 42, p. 273 (5th ed. 1984) (hereinafter Prosser and Keeton). "What we . . . mean by the word 'proximate,'" one noted jurist has explained, is simply this: "[B]ecause of convenience, of public policy, of a rough sense of justice, the law arbitrarily declines to trace a series of events beyond a certain point." *Palsgraf v. Long Island R.R. Co.,* 248 N.Y. 339, 352, 162 N.E. 99, 103 (1928) (Andrews, J., dissenting).

*McBride*, __ U.S. __, 131 S. Ct. at 2637 (citations original).

[¶12.]     Regarding foreseeability, the *McBride* Court stated that juries must initially be asked in FELA cases whether the railroad "'fail[ed] to observe that degree of care which people of ordinary prudence and sagacity would use under the

---

(. . . continued)

> Before FELA was enacted, the "harsh and technical" rules of state common law had "made recovery difficult or even impossible" for injured railroad workers. *Trainmen v. Virginia ex rel. Virginia State Bar,* 377 U.S. 1, 3, 84 S. Ct. 1113, 12 L. Ed. 2d 89 (1964). "[D]issatisfied with the [railroad's] common-law duty," Congress sought to "supplan[t] that duty with [FELA's] far more drastic duty of paying damages for injury or death at work due in whole or in part to the employer's negligence." *Rogers,* 352 U.S. at 507, 77 S. Ct. 443. Yet, *Rogers* observed, the Missouri court and other lower courts continued to ignore FELA's "significan[t]" departures from the "ordinary common-law negligence" scheme, to reinsert common-law formulations of causation involving "probabilities," and consequently to "deprive litigants of their right to a jury determination." *Id.,* at 507, 509–510, 77 S. Ct. 443. Aiming to end lower court disregard of congressional purpose, the *Rogers* Court repeatedly called the "any part" test the "*single*" inquiry determining causation in FELA cases. *Id.,* at 507, 508, 77 S. Ct. 443 (emphasis added).

> *McBride*, __ U.S. __, 131 S. Ct. at 2638-39 (citations original). Thus, the Court recognized the distinction between the common law proximate-cause standard and the FELA proximate-cause standard.

same or similar circumstances?'" *McBride*, __ U.S. __, 131 S. Ct. at 2643 (quoting *Gallick*, 372 U.S. at 118, 83 S. Ct. at 665). The Court went on to note that "the jury may be told that '[the railroad's] duties are measured by what is reasonably foreseeable under like circumstances.'" *Id.* (quoting *Gallick*, 372 U.S. at 118, 83 S. Ct. at 665).

[¶13.] In this case, the trial court instructed the jury on foreseeability under FELA as "requir[ing] Defendant to guard against those risks of dangers of which it knew or by the exercise of due care should have known. In other words Defendant's duty is measured by what a reasonably prudent person would anticipate or foresee resulting from particular circumstances." The trial court further instructed that

> because the amount of care exercised by a reasonably prudent
> person varies in proportion to the danger known to be involved
> in what is being done, it follows that the amount of caution
> required in the use of ordinary care will vary with the nature of
> what is being done, and all the surrounding circumstances
> shown by the evidence in the case. As the danger that should
> reasonably be foreseen increases, so the amount of care required
> by law also increases.

Given *McBride's* recent statement of the law concerning FELA cases, we conclude that these instructions accurately advised the jury on the issue of foreseeability.

[¶14.] Furthermore, there was a factual basis in the record for the jury to conclude that DM&E could foresee that a hazard could exist from ice accumulation on the rail yard. Jacobs points out, as a practical matter, that ice accumulation in South Dakota, especially in January, is foreseeable. Moreover, DM&E employee Kevin Walton, who worked on the rail yard the day before Jacobs's accident, testified that the rail yard was as slippery the day before Jacobs's accident as it was on the day of the actual accident. And Jacobs presented expert testimony through

Raymond Doffany, who opined that DM&E should have known that ice could accumulate on its Huron rail yard given the location and weather conditions. In fact, DM&E had certain safety precautions to prevent accidents like Jacobs's, which, according to Jacobs, indicated that DM&E actually knew of the dangers of ice accumulation. These precautions included clearing ice and snow from the rail yard, issuing "ice cleats" to employees, and salting and sanding slippery sections of ground.

[¶15.]     Collectively, these facts sufficiently demonstrate that DM&E could foresee that ice could accumulate on its rail yard thereby creating a hazard. *See Ferguson v. Moore-McCormack Lines, Inc.*, 352 U.S. 521, 523, 77 S. Ct. 457, 458, 1 L. Ed. 2d 511 (1957). It was, therefore, appropriately left to the jury to decide whether DM&E "fail[ed] to observe that degree of care which people of ordinary prudence and sagacity would use under the same or similar circumstances." *See McBride*, __ U.S. __, 131 S. Ct. at 2634 (quoting *Gallick*, 372 U.S. at 118, 83 S. Ct. at 665). Consequently, the trial court did not abuse its discretion in denying DM&E's motion for a judgment as a matter of law on foreseeability.

[¶16.]     **2.      Whether the trial court abused its discretion in denying DM&E's motion for a new trial.**

[¶17.]     DM&E's argument under this issue is related to the appropriateness of the jury instruction given on loss of earning capacity. The trial court instructed the jury on loss of earning capacity as follows:

> Loss of future earning capacity is the reduction in the ability to work and earn money generally, rather than a reduction in the ability to work and earn money in a particular job. In determining loss of future earning capacity, you may award

> Plaintiff damages for those earnings he is reasonably certain to lose in the future due to DM&E's conduct.
>
> In considering this element of damages, you should consider the Plaintiff's age, health, skill, training, experience, work habits, and whether the loss of earning capacity is temporary or permanent . . . .

DM&E did not object to this instruction at trial or propose an alternative instruction when settling jury instructions at the close of trial. Yet DM&E now proposes that a new instruction be given on remand that "reflect[s] the current regulatory environment and employment realities" after the adoption of the Americans with Disabilities Act of 1990 and ADA Amendments Act of 2008. Because DM&E did not appropriately preserve this issue, we decline to address it. *See Alvine Family Ltd. P'ship v. Hagemann*, 2010 S.D. 28, ¶ 20, 780 N.W.2d 507, 514 (stating that an objection to jury instructions must be made clearly on the record to preserve the issue for appeal) (citations omitted); *Knudson v. Hess*, 1996 S.D. 137, ¶ 12, 556 N.W.2d 73, 77 ("Having never raised the issue . . . at the trial level and having made no objection to the jury instruction on these grounds, [Plaintiff] cannot now assert that the trial court erred on matters it was never asked to determine.") (citations omitted).

[¶18.] DM&E further argues that under the "reasonably certain" standard, Jacobs failed to produce sufficient evidence of his future loss of earning capacity. DM&E claims that the evidence Jacobs used to establish loss of future earning capacity was deficient because it was based on speculation.

[¶19.] Generally, to recover for loss of earning capacity, the loss must be "reasonably certain" to occur. *Marnette v. Morgan*, 485 N.W.2d 595, 598 (S.D.

1992); *Martinez v. Union Pac. R.R. Co.*, 82 F.3d 223, 227-28 (8th Cir. 1996). Testimony was given comparing Jacobs's ability to perform certain jobs before and after his injury. This testimony established that Jacobs's injury left him with significant work limitations that have affected his ability to perform his duties as a rail-car mechanic. Further, a vocational rehabilitation expert testified that Jacobs's earning capacity has been negatively affected, which has reduced his wage expectation considerably.

[¶20.]     DM&E does not dispute these facts on appeal. Rather, DM&E argues that there was no "evidence [presented] at trial that [Jacobs] was reasonably certain to lose his job with DM&E." Notably, after his accident, DM&E continued to employ Jacobs in a position that accommodated his work limitations. But DM&E has not guaranteed Jacobs continued employment. Furthermore, there were sufficient facts making it reasonably certain that Jacobs would suffer a loss of earning capacity. The jury had before it evidence that Jacobs suffered a severe and debilitating injury that limited his ability to perform basic tasks as a rail-car mechanic. As a result, if Jacobs were forced to find work outside of the accommodating position DM&E created for him, Jacobs's expectation for pay would be reduced. Thus, the record contained evidence that it was reasonably certain that Jacobs would suffer a loss of earning capacity. Consequently, the trial court did not abuse its discretion in denying DM&E's motion for a new trial on this issue.

[¶21.]     DM&E also argues under this issue that "the trial court erred in failing to give a special verdict form with interrogatories so that the issue of potentially speculative loss of earning capacity damages could be assessed." This

Court has cautioned "trial courts to use special interrogatories in order to avoid confusion" in some cases but has also stated that "it [is] not an abuse of discretion to use . . . general verdict form[s]." *Zahn v. Musick*, 2000 S.D. 26, ¶ 42-43, 605 N.W.2d 823, 832. We have also stated that "[t]rial courts would be well advised in cases such as this to submit special interrogatories to the jury regarding the amount awarded for each element of damages. Such a practice would eliminate confusion over what part of the award, if any, was for such services, and aid in meaningful appellate review." *Id.* ¶ 42 (quoting *Stormo v. Strong*, 469 N.W.2d 816, 825 (S.D. 1991)). Here, we reaffirm that even though special interrogatories are preferable in cases like this, the trial court did not abuse its discretion in deciding not to give them.

[¶22.] **3. Whether the trial court erred in ordering prejudgment interest from the time of the verdict until the entry of judgment.**

[¶23.] DM&E argues that the trial court erred when it ordered DM&E to pay prejudgment interest from the date of the verdict because "prejudgment interest is not allowed under FELA." This issue arose at trial after DM&E moved for a stay of execution of judgment under SDCL 15-6-62(b)[3] until all post-trial motions were

---

3. SDCL 15-6-62(b) provides:

> In its discretion and on such conditions for the security of the adverse party as are proper, the court may stay the execution of or any proceedings to enforce a judgment pending the disposition of a motion for a new trial made pursuant to § 15-6-59, or of a motion for relief from a judgment or order made pursuant to § 15-6-60, or of a motion for judgment in accordance with a motion for a directed verdict made pursuant to § 15-6-50.

addressed. The trial court granted DM&E's motion. Jacobs responded to DM&E's post-trial motions and requested that the trial court clarify whether its order staying execution also stayed interest. Jacobs specifically contended that *prejudgment* interest was not at issue here. Instead, Jacobs argued that *post-judgment* interest was what he was pursuing. Jacobs further argued that a stay of execution generally does not stay interest. The trial court ultimately concluded that awarding interest in this case was appropriate because South Dakota's post-judgment interest statute and FELA do not conflict.

[¶24.] SDCL 15-16-3 provides that "[w]hen a judgment is for the recovery of money, interest from the time of the verdict or decision until judgment be finally entered must be added to the judgment of the party entitled thereto." For cases involving FELA, prejudgment interest is a matter of federal law and is prohibited. *Monessen Sw. Ry. Co. v. Morgan*, 486 U.S. 330, 335-36, 108 S. Ct. 1837, 1842-43, 100 L. Ed. 2d 349 (1988). Prejudgment interest has been defined as interest from the date of judicial demand until the verdict. *See La. & Ark. Ry. Co. v. Pratt*, 142 F.2d 847, 849 (5th Cir. 1944). FELA, however, only supersedes state statutes to the extent that they conflict. *Id.*

[¶25.] The interest permitted in this case was not prejudgment interest because it was not calculated from the date of judicial demand until the verdict. *See id.* Rather, the interest was calculated and permitted from "the time of the verdict" under SDCL 15-16-3. Consequently, FELA and SDCL 15-16-3 do not conflict with respect to post-judgment interest. Because they do not conflict, the trial court did

not err in permitting Jacobs to receive *post-judgment* interest from the date of the verdict under SDCL 15-16-3.

**Notice of Review #25827**

[¶26.]    **1.    Whether DM&E was entitled to a set-off on the judgment.**

[¶27.]    Jacobs filed a notice of review challenging the trial court's set-off of $16,086.06 from the judgment against DM&E.  The trial court granted this set-off because DM&E paid Jacobs wage-continuation benefits after his injury.  Jacobs admits DM&E paid him the $16,086.06, but argues it may not have been included in the jury's verdict.

[¶28.]    Whether a set-off was appropriate is reviewed under the abuse of discretion standard.  *See* 20 Am. Jur. 2d Counterclaim, Recoupment, Etc. § 11 (noting that "[t]he right of setoff itself is essentially an equitable right, which courts may enforce at their discretion") (citing *Newbery Corp. v. Fireman's Fund Ins. Co.*, 95 F.3d 1392 (9th Cir. 1996); *Mynatt v. Collis*, 274 Kan. 850, 57 P.3d 513 (2002); *Junak v. John*, 420 N.W.2d 668 (Minn. Ct. App. 1988); *Reisman v. Indep. Realty Corp.*, 89 N.Y.S.2d 763 (N.Y. App. Div. 1949); *Lake Mary Ltd. P'ship v. Johnston*, 145 N.C. App. 525, 551 S.E.2d 546 (2001)).  Under 45 U.S.C. § 55 of FELA, DM&E is entitled to a set-off because it continued to pay Jacobs' wages.  The law provides as follows:

> Any contract, rule, regulation, or device whatsoever, the purpose or intent of which shall be to enable any common carrier to exempt itself from any liability created by this chapter, shall to that extent be void: *Provided*, That in any action brought against any such common carrier under or by virtue of any of the provisions of this chapter, such common carrier may set off therein any sum it has contributed or paid to any insurance,

> relief benefit, or indemnity that may have been paid to the injured employee or the person entitled thereto on account of the injury or death for which said action was brought.

*Id.*

Based on the record, we find the trial court did not abuse its discretion by granting the set-off.

[¶29.]   Affirmed.

[¶30.]   GILBERTSON, Chief Justice, and KONENKAMP, ZINTER, and SEVERSON, Justices, concur.

[¶31.]   WILBUR, Justice, not having been a member of the Court at the time this action was submitted to the Court, did not participate.