#26784-a-GAS
**2014 S.D. 93**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

\* \* \* \*

CURTIS HUETHER,                                    Plaintiff and Appellant,

    v.

MIHM TRANSPORTATION CO.,
PAUL RADLOFF, and ROD SPARTZ,          Defendants and Appellees,

    and

DAVID BISSON, and JEFF DIETRICH,        Defendants.


\* \* \* \*

APPEAL FROM THE CIRCUIT COURT OF
THE FIRST JUDICIAL CIRCUIT
HUTCHINSON COUNTY, SOUTH DAKOTA

\* \* \* \*

THE HONORABLE PATRICK SMITH
Judge

\* \* \* \*

SCOTT R. SWIER
BROOKE SWIER SCHLOSS
Swier Law Firm, Prof. LLC
Avon, South Dakota                               Attorneys for plaintiff
                                and appellant.


SABRINA L. SAYLER
Crary, Huff, Ringgenberg, Hartnett
  & Storm, PC
Dakota Dunes, South Dakota                  Attorneys for defendants and
                                appellees Mihm and Paul
                                Radloff.


SCOT D. MANNSCHRECK
Vermillion, South Dakota                        Attorney for defendant and
                                appellee Rod Spartz.

\* \* \* \*

                                CONSIDERED ON BRIEFS ON
                                NOVEMBER 17, 2014
                                OPINION FILED 12/23/14

#26784

SEVERSON, Justice

[¶1.] Curtis Huether brought this action alleging fraudulent misrepresentation and deceit and civil conspiracy against David Bisson, Mihm Transportation Co. (Mihm), Paul Radloff, Rod Spartz, and Jeff Dietrich (collectively Defendants). Bisson did not defend the lawsuit, and as a result, the circuit court entered a default summary judgment against him for fraudulent misrepresentation and deceit in the amount of $100,004 in actual damages and $1,000,000 in punitive damages. A jury trial was held on the remaining claims against Defendants. The jury found in favor of Huether on the civil conspiracy claim as to Mihm and Radloff. The jury awarded Huether $1,891 against Mihm and $500 against Radloff, and the circuit court imposed joint and several liability for the total jury award ($2,391) against Mihm and Radloff. Huether appeals asserting that the circuit court erred in failing to impose upon Bisson, Mihm, and Radloff joint and several liability for the totality of the summary judgment award, including punitive damages, and in denying his motion for judgment as a matter of law against Spartz. We affirm.

*Facts and Procedural History*

[¶2.] In September 2008, Bisson contacted Huether with a proposed deal wherein Huether would purchase 70 "open" (i.e., non-pregnant) heifers from Bisson at $1,425 per head (totaling $99,750), Huether would breed the open heifers, and then Bisson would purchase the "springing" (i.e., impregnated) heifers from Huether at $2,000 per head (totaling $140,000). Huether and Bisson had entered a written agreement in the past, and the two proceeded under an understanding similar to the terms of the prior agreement. Although Bisson promised a written

contract, none was provided or entered into. Bisson hired Mihm to transport the heifers from Indiana to Huether's farm in Hutchinson County, South Dakota. Mihm contracted with Radloff to transport the heifers and sent load information to Radloff. Radloff transported the heifers to Huether and, upon arrival to Huether's farm on September 9, 2008, Radloff gave Huether the heifers' health certificates and the transportation bill, which totaled $2,391. Huether did not review the health certificates at that time.

[¶3.] Bisson called Huether a few days after the heifers arrived and arranged for Bisson and Bisson's veterinarian, Jeff Dietrich, to dehorn some of the heifers and further "work" the heifers on September 24, 2008, even though Huether would not be at his farm that day. Bisson assured Huether that he did not need to be present. Huether alleged at trial that Bisson and Dietrich altered the heifers' identification tags that day so that the heifers would appear to originate from South Dakota.

[¶4.] In January of 2009, some of the heifers began calving early.[1] As a result, Huether called a local veterinarian to examine the heifers in March of 2009, and the veterinarian ascertained that some of the supposedly open heifers were actually pregnant when Radloff delivered them in September of 2008. In addition, the veterinarian or the veterinarian's assistant noticed that the heifers' identification tags appeared to have been altered or removed. Huether then examined the health certificates that accompanied the heifers when they were delivered by Radloff. Huether's examination revealed that the heifers' state of

---

1. The normal gestation period for a heifer is about nine months.

origin, ages, identification information, cosignor and cosignee information, and interstate movements appeared to be falsified or altered.

[¶5.] Huether alerted the South Dakota State Veterinarian and the United States Department of Agriculture, both of which began investigating. The State investigator, Dr. Mendel Miller, found that the heifers' identifications and health certificates were incorrect, the heifers' medical information could not be verified, and the heifers' origin could not be determined. As a result, the State quarantined the heifers until they were tested for tuberculosis. The heifers could not be sold or moved while in quarantine. Huether could have had the heifers tested for tuberculosis shortly after the quarantine began, but chose not to do so until more information could be gathered about the heifers' origin.

[¶6.] On June 1, 2009, while the heifers were under quarantine, Huether's attorney received a letter from Mihm and Radloff. The letter stated that the heifers actually came from Spartz's farm in Goodwin, South Dakota. Later that same day, when Huether and his attorney called Mihm about the letter, Mihm, and later Radloff, admitted the letter was a lie. Mihm claimed that Bisson had told him what to write. Mihm also claimed that the heifers were from Indiana, so within a matter of hours, Mihm gave two different accounts of the heifers' origin. Radloff asserted that he did not know that Bisson had directed Mihm to write the letter, but Mihm and Radloff admitted they knew the letter was false when it was sent.

[¶7.] Having failed to ascertain the origin of the heifers from Mihm or Radloff, Huether and Dr. Miller followed up on a possible lead in Spartz. Spartz was a grain and beef farmer and had a long-standing business relationship with

Bisson. Spartz, too, lied about the origin of the heifers, claiming the heifers had indeed come from his farm. Huether believed that Bisson directed Spartz to lie about the origin of the heifers as part of the ongoing fraud against Huether. At trial, Spartz admitted that he lied at Bisson's request.

[¶8.] On or about October 29, 2009, Huether finally had the heifers tested for tuberculosis; they tested negative. The State then lifted the quarantine. The heifers were quarantined for approximately five months from March to October. Huether sold the heifers for about $932 per head, and he alleged that he suffered $100,004 in damages. The heifers were sold at approximately the same time that they would have been sold to Bisson under the original contract.

[¶9.] Huether filed suit against Defendants in August of 2010, alleging, inter alia, fraudulent misrepresentation and deceit and civil conspiracy. Huether prayed for actual and punitive damages. Huether's claim for $100,004 was determined primarily by the difference between the claimed contract price of $2,000 per head and the price for which he eventually sold the heifers, $932 per head. Trial testimony established that the market value of the heifers declined from the time when Huether and Bisson settled on the contract price to when Huether sold the heifers. Huether moved for summary judgment against Bisson regarding the fraudulent misrepresentation and deceit claim, and the circuit court held a hearing on April 25, 2013. Bisson did not appear or resist the claim.[2] The other Defendants filed resistances to the motion for summary judgment by Huether against Bisson

---

2. Huether properly served Bisson with the lawsuit, all motions, and all other actions throughout the pendency of the case.

because of the possibility of joint and several liability, but the circuit court ruled that the co-defendants could not intervene. The circuit court entered default summary judgment against Bisson for $100,004 in actual damages and $1,000,000 in punitive damages. The circuit court instructed all parties that the summary judgment applied only to Bisson and that any underlying torts for the civil conspiracy claim needed to be established at trial. Although not required by statute, the court entered findings of fact and conclusions of law against Bisson, but none of those findings or conclusions related to the civil conspiracy claim.

[¶10.]     Huether proceeded to trial against the remaining Defendants. The circuit court again clarified that the default summary judgment only applied to Bisson and only pertained to Huether's fraudulent misrepresentation and deceit claim against Bisson, not the civil conspiracy claim. At trial Dr. Miller testified that what happened with Huether's heifers was "quite in depth and quite complicated, [with] a lot of deception and dishonesty." The State of South Dakota's Chief Veterinarian testified that "it's one of the most confusing movements of livestock" that he had ever seen. Mihm described its participation in the letter as a "lie," a "mistake," and an "error in judgment." Radloff stated that it was "the biggest mistake I think I have ever made." Spartz thought that lying to Huether was "no big deal," he did not think anything of it, and he did not care what happened.

[¶11.]     At the close of plaintiff's presentation of the evidence, the circuit court denied both Huether's and Defendants' motions for judgment as a matter of law. At the close of the parties' presentation of the evidence, the court again denied Huether's and Defendants' renewed motions for judgment as a matter of law

because the court believed there were issues of fact that needed to be decided by the jury. The parties then submitted jury instructions and special interrogatories to the court, and the court reviewed those instructions and interrogatories with the parties' attorneys. The circuit court instructed the jury that the court had previously found that Bisson committed fraudulent misrepresentation and deceit against Huether and that it had already awarded Huether $100,004 in actual damages and additional punitive damages. The circuit court further instructed the jury that Huether bore the burden of proving that two or more of the Defendants conspired to commit fraud and deceit against Huether. The court properly instructed the jury on the elements of civil conspiracy and fraudulent misrepresentation and deceit. Defendants requested special interrogatories as to whether Mihm, Radloff, Spartz, and Dietrich were *individually* liable to Huether for fraudulent misrepresentation and deceit. The jury found that none of the aforementioned Defendants were individually liable to Huether for fraud and deceit. The circuit court also submitted to the jury a special interrogatory on Huether's civil conspiracy claim for each of the Defendants except Bisson. The jury held Mihm liable to Huether on the basis of civil conspiracy in the amount of $1,891 and Radloff liable to Huether on the basis of civil conspiracy for $500. These amounts totaled what the evidence had established as the transportation bill for the heifers paid by Huether to Mihm and Radloff (i.e., $2,391). The jury did not hold any of the other Defendants liable to Huether on the basis of civil conspiracy.

[¶12.] After the jury entered its verdict, the parties submitted proposed judgments to the circuit court. Huether's proposed judgment held Bisson, Mihm,

and Radloff jointly and severally liable for $1,100,004. The circuit court ruled that Bisson, Mihm, and Radloff were not jointly and severally liable for $1,100,004 because it was not established at trial or on summary judgment that Bisson was a member of the civil conspiracy with Mihm and Radloff. Further, it was not established that Bisson's fraudulent misrepresentation or deceit was the underlying tort for the civil conspiracy claim. The circuit court explained in its memorandum opinion that the underlying tort for the civil conspiracy claim was not determined and that it could have been something other than Bisson's fraudulent misrepresentation and deceit. The jury did not award punitive damages to Huether against any of the Defendants. The circuit court upheld the jury verdict, and Huether now appeals to this Court.

[¶13.] Huether raises three issues on appeal:

1. Whether the circuit court erred by not holding Bisson, Mihm, and Radloff jointly and severally liable for the actual damages awarded to Huether in the default summary judgment against Bisson.

2. Whether the circuit court erred by not holding Bisson, Mihm, and Radloff jointly and severally liable for the punitive damages awarded to Huether in summary judgment against Bisson.

3. Whether the circuit court erred in denying Huether's motion for judgment as a matter of law against Spartz.

*Standard of Review*

[¶14.] Huether contends that the circuit court erred in applying the law of civil conspiracy and joint and several liability to the facts of the case. This constitutes a mixed question of law and fact. *See In re Dorsey & Whitney Trust Co.*, 2001 S.D. 35, ¶ 6, 623 N.W.2d 468, 471 (stating a mixed question of law and fact

includes one in which "the historical facts are admitted or established, the rule of law is undisputed, and the issue is whether . . . the rule of law as applied to the established facts is or is not favorably satisfied[]" (quoting *Permann v. S.D. Dep't of Labor*, 411 N.W.2d 113, 118 (S.D. 1987) (internal quotation marks omitted)). In determining the standard of review for a mixed question of law and fact, the Court considers the nature of the inquiry. *Stockwell v. Stockwell*, 2010 S.D. 79, ¶ 16, 790 N.W.2d 52, 59. We stated in *Stockwell*:

> If application of the rule of law to the facts requires an inquiry that is 'essentially factual'—one that is founded 'on the application of the fact-finding tribunal's experience with the mainsprings of human conduct'—the concerns of judicial administration will favor the [circuit] court, and the [circuit] court's determination should be classified as one of fact reviewable under the clearly erroneous standard. If, on the other hand, the question requires us to consider legal concepts in the mix of fact and law and to exercise judgment about the values that animate legal principles, then the concerns of judicial administration will favor the appellate court, and the question should be classified as one of law and reviewed de novo.

*Id.* (quoting *Darling v. W. River Masonry, Inc.*, 2010 S.D. 4, ¶ 10, 777 N.W.2d 363, 366). To the extent that Huether asks us to examine the application of a legal doctrine to established facts, we review the application of the law under the de novo standard of review. *See id.*; *Hanson v. Vermillion Sch. Dist. No. 13-1*, 2007 S.D. 9, ¶ 24, 727 N.W.2d 459, 467. Factual issues are reviewed under the clearly erroneous standard. *Vander Heide v. Boke Ranch, Inc.*, 2007 S.D. 69, ¶ 17, 736 N.W.2d 824, 831 (citing *City of Deadwood v. Summit, Inc.*, 2000 S.D. 29, ¶ 9, 607 N.W.2d 22, 25).

[¶15.] However, Appellees point out that Huether also challenges whether certain facts were found by the jury.[3] "When reviewing the sufficiency of the evidence, we accept all evidence favorable to the verdict, and reasonable inferences therefrom, without weighing credibility or resolving conflicts." *Fritzmeier v. Krause Gentle Corp.*, 2003 S.D. 112, ¶ 9, 669 N.W.2d 699, 702 (quoting *Maryott v. First Nat'l Bank of Eden*, 2001 S.D. 43, ¶ 21, 624 N.W.2d 96, 104). "If there is evidence if believed by the fact finder that supports the jury's verdict, then we will affirm." *Id.*

[¶16.] Finally, we review Huether's claim that the circuit court erred in denying his motion and renewed motion for judgment as a matter of law against Spartz under the abuse of discretion standard. *Bertelsen v. Allstate Ins. Co.*, 2013 S.D. 44, ¶ 16, 833 N.W.2d 545, 554 (citing *Jacobs v. Dakota, Minn. & E. R.R. Corp.*, 2011 S.D. 68, ¶ 9, 806 N.W.2d 209, 212). This Court's review of motions and renewed motions for judgment as a matter of law is well-established.

> We view the evidence and testimony in a light most favorable to the verdict[ and, t]hen, without weighing the evidence, the Court must decide if there is evidence which would have supported or did support a verdict. If sufficient evidence exists so that reasonable minds could differ, judgment as a matter of law is not appropriate. In resolving sufficiency of evidence issues on appeal, this Court should examine the record to determine only if there is competent and substantial evidence to support the verdict.

*Id.* (citations omitted) (internal quotation marks omitted).

*Analysis and Decision*

---

3.  Appellees argue that Huether's claim rests on two factual inquiries: (1) Did the jury find that Bisson, Mihm, and Radloff were members of a civil conspiracy? and (2) Did the jury find that Bisson's fraudulent misrepresentation and deceit was the underlying tort of the civil conspiracy that would allow the circuit court to impose joint and several liability?

[¶17.]   *1.   Whether the circuit court erred by not holding Bisson, Mihm, and Radloff jointly and severally liable for the actual damages awarded to Huether in default summary judgment against Bisson.*

[¶18.]   Huether argues that the circuit court committed clear legal error when it did not hold Bisson, Mihm, and Radloff jointly and severally liable under the doctrine of civil conspiracy.  Huether correctly points out that civil conspiracy is not an independent cause of action, but rather a means of imposing vicarious liability. *Selle v. Tozser*, 2010 S.D. 64, ¶ 25, 786 N.W.2d 748, 756 (citing *Beck v. Prupis*, 529 U.S. 494, 503, 120 S. Ct. 1608, 1615, 146 L. Ed. 2d 561 (2000)).  In order to establish a prima facie case of civil conspiracy, the plaintiff must prove: "(1) two or more persons; (2) an object to be accomplished; (3) a meeting of the minds on the object or course of action to be taken; (4) the commission of one or more unlawful overt acts; and (5) damages as the proximate result of the conspiracy." *In re Temporomandibular Joint (TMJ) Implants Prods. Liab. Litig.*, 113 F.3d 1484, 1498 (8th Cir. 1997).  Further, "[c]ivil conspiracy is not an independent cause of action, but is sustainable only after an underlying tort claim has been established." *Selle*, 2010 S.D. 64, ¶ 25, 786 N.W.2d at 756 (quoting *Kirlin v. Halverson*, 2008 S.D. 107, ¶ 59, 758 N.W.2d 436, 455) (internal quotation marks omitted).  "The purpose of a civil conspiracy claim is to impose civil liability for damages on those who agree to join in a tortfeasor's conduct and, thereby, become liable for the ensuing damage, simply by virtue of their agreement to engage in the wrongdoing." *Id.* (quoting *Macomber v. Travelers Prop. & Cas. Corp.*, 894 A.2d 240, 254-55 (Conn. 2006)).

[¶19.]   Huether's primary contention is that the circuit court erred when it failed to impose joint and several liability as to Bisson, Mihm, and Radloff for the

civil conspiracy claim. He asserts that the circuit court found as a matter of law that Bisson committed fraudulent misrepresentation and deceit against Huether, which is correct. The circuit court found Bisson committed fraudulent misrepresentation and deceit against Huether in an unopposed summary judgment hearing. However, Huether also insists that the circuit court found that Bisson's fraudulent misrepresentation and deceit was the "underlying tort claim" for the civil conspiracy. Huether further contends that Bisson's ongoing fraud was the *only possible* underlying tort that could give rise to the civil conspiracy. Finally, Huether asserts that "the jury found that Mihm and Radloff committed civil conspiracy by joining Bisson's tortious conduct." We disagree.

[¶20.] The jury did not find, and was not asked to find: (1) what the underlying tort claim was with regards to the civil conspiracy; (2) whether Bisson was a co-conspirator in the civil conspiracy; (3) whether Bisson's fraudulent misrepresentation and deceit was the underlying tort for the civil conspiracy; and (4) whether the damages (including the summary judgment damages) of the civil conspiracy flowed from Bisson's conduct or other conduct. There was no jury instruction or special interrogatory asking or telling the jury to find any of the aforementioned facts. In essence, nothing in the jury's verdict linked Bisson, his tortious conduct, or any proximately resulting damages to the civil conspiracy of Mihm and Radloff. The jury specifically found that *Mihm and Radloff* conspired against Huether and were liable to Huether for $1,891 and $500 respectively. The circuit court correctly notes in its memorandum opinion that the jury could have

found the underlying tort to be something other than Bisson's fraudulent misrepresentation and deceit.[4]

[¶21.] It is the parties' duty to request jury instructions and special interrogatories for their theory of the case. *City of Sioux Falls v. Kelley*, 513 N.W.2d 97, 108 (S.D. 1994) (citing *Glanzer v. St. Joseph Indian Sch.*, 438 N.W.2d 204 (S.D. 1989)). "The failure of a court to correctly or fully instruct the jury is not reviewable unless an objection or exception to the instruction identifying the defect therein with sufficient particularity was taken or a written instruction correctly stating the law was requested." *Isaac v. State Farm Mut. Auto. Ins. Co.*, 522 N.W.2d 752, 757 (S.D. 1994) (quoting *Wells v. Billars*, 391 N.W.2d 668, 670 (S.D. 1986)). Under SDCL 15-6-51(a)-(c), the circuit court must give the parties the opportunity to request jury instructions, inform the parties about the jury instructions that have been requested, and give the parties the opportunity to object to the court's proposed jury instructions before they are settled. The circuit court provided the parties with such opportunities. Huether objected to the form and content of some of those jury instructions. "A party who objects to an instruction or the failure to give an instruction must do so on the record, stating *distinctly the matter objected to*

---

4. The circuit court noted in its memorandum opinion:

> As the jury made no determination as to what the underlying tort was, the court is not going to assume what it is. That said, the court does consider the fact that the jury awarded the exact amount of Huether's shipping bill [(i.e., $2,391)] . . . as damages.

Evidence was presented at trial that suggested Mihm and Radloff conspired against Huether to inflate the shipping costs of the heifers. Thus, the jury could have found that the underlying tort for the civil conspiracy claim was something other than Bisson's conduct.

*and the grounds of the objection.*"  SDCL 15-6-51(c)(1) (emphasis added); *see also*

*Duda v. Phatty McGees, Inc.*, 2008 S.D. 115, ¶ 27, 758 N.W.2d 754, 762 ("An

attorney must be clear when objecting to jury instructions 'so the trial court is

advised of what possible errors exist and be granted the opportunity to correct any

instructions.'" (quoting *Parker v. Casa Del Rey-Rapid City, Inc.*, 2002 S.D. 29, ¶ 15,

641 N.W.2d 112, 118) (internal quotation marks omitted)).  "The complaining party

must have properly objected to the instruction in order to preserve the issue on

appeal, or the improper instruction becomes the law of the case." *Knudson v. Hess*,

1996 S.D. 137, ¶ 11, 556 N.W.2d 73, 77 (quoting *Wallahan v. Black Hills Elec.*

*Coop.*, 523 N.W.2d 417, 419-20 (S.D. 1994)).

[¶22.]        Huether objected to the form of the special interrogatories, but his

objections were insufficient and non-specific to the problem he now faces on appeal.

In fact, in ruling on Huether's objection to special interrogatory no. 4, the circuit

court *specifically* addressed the problem he now faces on appeal.  The court stated:

> The [c]ourt has not found as a matter of law that [Bisson's]
> fraud and deceit which was the basis of the underlying tort of
> any conspiracy between Mr. Bisson and the defendants, and I
> would hold you to your responsibility to establish that
> underlying tort in this trial.
>
> If that underlying tort is established, then there would be—then
> the civil conspiracy claim will survive and damages can be
> awarded as an element of civil conspiracy.  It is required that
> damages be proven as they connect to the underlying tort.

The circuit court gave Huether the opportunity to request a specific jury instruction

or special interrogatory to ascertain Bisson's participation in the civil conspiracy or

whether his fraud and deceit was the underlying tort.  Huether failed to request

such an instruction or interrogatory. Therefore, Huether waived the issue on appeal.

[¶23.] Huether's failure to request jury instructions or special interrogatories does not necessarily mean the jury instructions were legally insufficient. Jury instructions "must be considered as a whole" and must "correctly state the applicable law." *Dunes Hospitality, L.L.C. v. Country Kitchen Int'l, Inc.*, 2001 S.D. 36, ¶ 7, 623 N.W.2d 484, 487-88 (quoting *Isaac*, 522 N.W.2d at 759). We afford the jury's verdict a presumption of validity. *See State v. Moschell*, 2004 S.D. 35, ¶ 40, 677 N.W.2d 551, 564 ("We will set aside a jury verdict only when the evidence and the reasonable inferences from it fail to sustain any rational theory [supporting the verdict].").

[¶24.] In this case, the jury was properly instructed on the law of fraudulent misrepresentation and deceit and the elements of civil conspiracy. The jury's verdict reflects that the jury found an underlying tort, Mihm and Radloff conspired together to commit that tort, and Huether suffered a total of $2,391 in actual damages as a result. We will not substitute our judgment for that of the jury. *City of Bridgewater v. Morris, Inc.*, 1999 S.D. 64, ¶ 5, 594 N.W.2d 712, 715 (citing *Westover v. East River Elec. Power*, 488 N.W.2d 892, 896 (S.D. 1992)). The circuit court had the parties submit requested judgments in accordance with the jury's verdict. The circuit court ruled that the link between Bisson and the remaining Defendants was not established, and the jury's verdict was not deficient. We conclude that the circuit court properly instructed the jury and did not misapply the law in this case. We further conclude that the circuit court correctly held Mihm and

Radloff jointly and severally liable on the $2,391 in actual damages as found by the jury.

[¶25.]    *2.    Whether the circuit court erred by not holding Bisson, Mihm, and Radloff jointly and severally liable for the punitive damages awarded to Huether in summary judgment against Bisson.*

[¶26.]    Huether next contends that the circuit court erred in not holding Bisson, Mihm, and Radloff jointly and severally liable on the $1,000,000 punitive damage award that arose from the summary judgment proceeding against Bisson. Issue 2 follows the same trajectory as issue 1. The jury did not find, and was not asked or instructed to find, whether Bisson's tortious conduct was the underlying tort for the civil conspiracy claim. In addition, the jury did not find that Bisson was a member of the civil conspiracy. The onus to request jury instructions reflecting Huether's theory of the case fell on Huether, *Kelley*, 513 N.W.2d at 108, and he failed to request such instructions. Therefore, we affirm the circuit court's ruling refusing to impose joint and several liability on the punitive damages award.

[¶27.]    *3.    Whether the circuit court erred in denying Huether's motion for judgment as a matter of law against Spartz.*

[¶28.]    At the close of Huether's presentation of the evidence, and again before settling jury instructions, Huether moved for judgment as a matter of law against Defendants, including Spartz. The circuit court rejected Huether's motion, explaining there were factual issues that the jury needed to decide. Huether argues that the circuit court erred because there were no factual issues in dispute, and Huether proved every element of civil conspiracy against Spartz.

[¶29.]    Judgment as a matter of law is proper when "there is no legally sufficient evidentiary basis for a reasonable jury to find for that party on that

issue[.]" SDCL 15-6-50(a)(1). As stated above, to make out a prima facie case for civil conspiracy, the plaintiff must prove: "(1) two or more persons; (2) an object to be accomplished; (3) a meeting of the minds on the object or course of action to be taken; (4) the commission of one or more unlawful overt acts; and (5) damages as the proximate result of the conspiracy." *In re TMJ Implants*, 113 F.3d at 1498. Spartz had a long-standing business relationship with Bisson. Spartz admitted at trial that he lied to Huether and the State's investigator at Bisson's request. Spartz lied about the origin of the heifers and thought the lies were "no big thing." He testified that Bisson did not tell him why he should lie or to whom he should lie to. Spartz further testified that Bisson did not tell him what the objective was for the lie. Bisson did not tell Spartz about Huether, the State investigator, or anything about the quarantine. By Spartz's own testimony, he admitted (1) there were two or more people (Spartz and Bisson) and (4) the commission of an unlawful act (lying about the origin of the cattle). However, the circuit court felt that there were factual questions as to the object to be accomplished, whether there was a meeting of the minds on the object or course of action to be taken, and whether damages were a proximate result. "[T]he question is not whether this Court would have made the same findings the circuit court did, but whether on the entire evidence, we are left with a definite and firm conviction that a mistake has been committed." *Hubbard v. City of Pierre*, 2010 S.D. 55, ¶ 26, 784 N.W.2d 499, 511 (quoting *Wangsness v. Builders Cashway, Inc.*, 2010 S.D. 14, ¶ 9, 779 N.W.2d 136, 140 (internal quotation marks omitted)).

[¶30.]     Spartz argues that based on his testimony, a reasonable jury could find that he did not have the requisite knowledge and intent required to be held liable to Huether on the civil conspiracy claim. Spartz asserts that admitting to a lie is not enough to hold him liable for civil conspiracy. Indeed, the jury found that Spartz was not part of a civil conspiracy against Huether. "We view the evidence in the light most favorable to the verdict." *Bertelsen*, 2013 S.D. 44, ¶ 16, 833 N.W.2d at 554 (quoting *Jacobs*, 2011 S.D. 68, ¶ 9, 806 N.W.2d at 212) (internal quotation marks omitted). "[T]his Court will not usurp the jury's function in resolving conflicts in the evidence, weighing credibility, and sorting out the truth." *State v. Dowty*, 2013 S.D. 72, ¶ 15, 838 N.W.2d 820, 825 (quoting *State v. Swan*, 2008 S.D. 58, ¶ 9, 753 N.W.2d 418, 420) (internal quotation marks omitted). Based on our review, we cannot firmly say that the circuit court abused its discretion in denying Huether's motion for judgment as a matter of law against Spartz. There were underlying factual questions concerning the elements of Huether's civil conspiracy claim that the jury needed to address, especially with regards to "(2) an object to be accomplished; (3) a meeting of the minds on the object or course of action to be taken; . . . and (5) damages as the proximate result of the conspiracy." *In re TMJ Implants*, 113 F.3d at 1498. Therefore, we affirm the circuit court's denial and uphold the jury's verdict.

[¶31.]     We affirm.

[¶32.]     GILBERTSON, Chief Justice, and KONENKAMP, ZINTER, and WILBUR, Justices, concur.