#27288, #27289-a-GAS
**2015 S.D. 91**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

* * * *

RYAN STENSLAND,                                    Plaintiff and Appellant,

v.

HARDING COUNTY,
a governmental subdivision
of the State of South Dakota,                      Defendant and Appellee.

* * * *

APPEAL FROM THE CIRCUIT COURT OF
THE FOURTH JUDICIAL CIRCUIT
HARDING COUNTY, SOUTH DAKOTA

* * * *

THE HONORABLE JEROME A. ECKRICH, III
Judge

* * * *

ROBERT L. MORRIS
Belle Fourche, South Dakota                        Attorney for plaintiff and
                                                   appellant.


DONALD P. KNUDSEN
Gunderson, Palmer, Nelson
  & Ashmore, LLP
Rapid City, South Dakota                           Attorneys for defendant and
                                                   appellee.

* * * *

ARGUED SEPTEMBER 1, 2015
OPINION FILED **11/24/15**

SEVERSON, Justice

[¶1.]        Ryan Stensland sued Harding County for negligence after he drove

into a washed-out portion of a county road.  A jury returned a general verdict for the

County.  Stensland appeals alleging that the court erred because it did not grant his

motion for judgment as a matter of law that the County was negligent.  He alleges

the court further erred by allowing questions regarding assumption of the risk and

contributory negligence to go to the jury.  The County filed a notice of review

alleging that the court erred by instructing the jury that the County had been

negligent per se.  We affirm.

## Background

[¶2.]        The driveway to Kevin Robinson's home is along County Road 734 (CR

734).  On April 12, 2009, Robinson and his family were traveling east on CR 734.

He testified at trial that the area had received snow and rain the week before.  As

he drove over a section of the road with a culvert in it, he noticed a small hole in the

road and water in the ditches.  He stopped to investigate.  He testified that he

stomped on the road and half of it fell in, exposing the culvert underneath.  His wife

called highway superintendent Brad Bowers to report the road condition.

[¶3.]        At trial, Brad Bowers testified that the County subsequently placed

signs on the road that warned of the washout.  It placed a "Road Closed" sign

mounted on a type I barricade near the Robinson's driveway.  At some time, an

unknown individual moved the sign further west to the intersection of CR 734 and a

road known as Carlson Road.  The County also placed type I barricades flanked by

orange cones on both sides of the washout, roughly 20 to 30 feet from the edges.  An

-1-

unknown individual placed a delineator post in the middle of the washout. Multiple people testified that these delineator posts usually mark the edge of the road where culverts end.

[¶4.] The County's signs undisputedly did not comply with the Manual on Uniform Traffic Control Devices (MUTCD). Instead of the signs in place, the MUTCD would require a type III barricade in this scenario. The type I barricade used by the County was shorter and narrower than a type III barricade.[1] A type I barricade has just one horizontal board with reflective tape on it rather than three boards. The manual also required a sign that said "Road Closed Ahead" and a second sign before the dangerous condition that said "Road Closed."

[¶5.] On the night of May 16, 2009, Ryan Stensland and his daughter were traveling east on CR 734. He testified that he encountered washboard conditions on the road that required him to slow down and drive on the left side of the road. Further, he testified that he did not see any signs that would warn him of a dangerous road condition. Although he admitted that he saw a delineator post in the middle of the washout, he did not think it indicated danger. Instead, he thought it marked the edge of the road. Thereafter, he drove his car into the washed-out section of the road that the Robinson family had previously reported to the County. Stensland and his daughter were able to get out of the car, but Stensland had pain in his left leg and could not put weight on it.

---

1.     A type I barricade has a minimum height of 36 inches and minimum width of 24 inches. In contrast, a type III barricade has a minimum height of five feet and a minimum width of four feet. The horizontal boards of each barricade are eight to twelve inches high.

[¶6.]     The night of the accident, Robinson and his nephew were traveling home on CR 734. Robinson saw lights near the washout and drove over to the area. He encountered Stensland's daughter on the road, and she told Robinson that she and her father had been involved in an accident. Robinson helped Stensland into Robinson's vehicle and took Stensland and his daughter to meet Stensland's father somewhere around the town of Ralph, which is located to the northwest of the washout. Stensland did not call law enforcement or seek medical help that night. Instead, he went to the emergency room the next day where he learned that he fractured the tibia of his left leg, which required surgery to fix.

[¶7.]     Because the County did not comply with the MUTCD, Stensland sought a determination prior to trial on the issue of negligence per se. The County disputed that it was required to follow the MUTCD for roads that were constructed without federal aid, like CR 734. Based on SDCL 31-28-6, the court determined that the MUTCD applies to roads constructed without federal aid. Therefore, the court determined that the County acted negligently because the County failed to follow safety statutes, specifically SDCL 31-28-6 and SDCL 31-32-10, which were meant to prevent the type of incident involved. Accordingly, it instructed the jury that the County breached its duties. The court further instructed the jury that Stensland had the burden of proving that the County's negligent actions were the legal cause of Stensland's injury.[2]

---

2.     Our case law uses legal cause and proximate cause interchangeably.

[¶8.]    At the close of trial, Stensland's counsel moved for judgment as a matter of law "as to the liability of the County." The court denied the motion, explaining that questions of causation and damages remained for the jury to determine. Stensland's counsel also moved for judgment as a matter of law on the County's defenses of contributory negligence and assumption of the risk. The court denied the motion and instructed the jury that the County had the burden to prove the defenses of contributory negligence and assumption of the risk by greater convincing force of the evidence. On appeal, Stensland argues that the court abused its discretion in denying judgment as a matter of law. Additionally, he contends that the evidence did not support the court giving the jury instructions on contributory negligence or assumption of the risk and that those instructions prejudiced him. By way of notice of review, the County asserts that SDCL 31-28-6 does not require the County to follow the MUTCD on roads that were constructed without federal aid, such as CR 734, and therefore the court erred by determining that the County was negligent per se.

### Standard of Review

[¶9.]    We review the denial of a motion for judgment as a matter of law under the abuse of discretion standard. *Huether v. Mihm Transp. Co.*, 2014 S.D. 93, ¶ 16, 857 N.W.2d 854, 860. Therefore, "[w]e view the evidence and testimony in a light most favorable to the verdict and, then, without weighing the evidence, the Court must decide if there is evidence which would have supported or did support a verdict. If sufficient evidence exists so that reasonable minds could differ, judgment

as a matter of law is not appropriate." *Id.* (quoting *Bertelsen v. Allstate Ins. Co.*, 2013 S.D. 44, ¶ 16, 833 N.W.2d 545, 554).

## Analysis

[¶10.]     Stensland's main contention on appeal is that the County's admitted violation of SDCL 31-28-6 entitled him to judgment as a matter of law "as to the liability of the County." The court did instruct the jury that the County's violation of SDCL 31-28-6 was a breach of duty. Therefore, it gave a negligence per se instruction. Stensland argues that he is entitled to judgment as a matter of law because the County violated the statute and "had no excuse"; thus "causation was not an issue." To the contrary, we have explained that a "[v]iolation of [a] statute 'alone is not sufficient to render [defendant] liable to the plaintiff. Before [defendant] may be held to respond in damages it must further appear that [defendant's] violation of the duty placed upon [defendant] by this rule was the proximate cause of plaintiff's injury.'" *Thompson v. Summers*, 1997 S.D. 103, ¶ 18, 567 N.W.2d 387, 394 (quoting *Blakey v. Boos*, 83 S.D. 1, 8, 153 N.W.2d 305, 309 (1967)); *see also Janis v. Nash Finch Co.*, 2010 S.D. 27, ¶ 8, 780 N.W.2d 497, 500 (quoting *Stone v. Von Eye Farms*, 2007 S.D. 115, ¶ 6, 741 N.W.2d 767, 770) ("Negligence is the breach of a duty owed to another, the proximate cause of which results in an injury."). Negligence per se is not equivalent to the four elements of negligence. *See Negligence per se*, Black's Law Dictionary (10th ed. 2014) ("Negligence established as a matter of law, so that breach of the duty is not a jury question. Negligence per se usually arises from a statutory violation."). Therefore,

even though the court determined that the County breached a duty, thereby finding that it acted negligently, the other elements of negligence must still be met.

[¶11.]     Prior cases have stated that "violation of a safety statute is negligence as a matter of law unless it is legally excused." *Baddou v. Hall*, 2008 S.D. 90, ¶ 19, 756 N.W.2d 554, 559 (collecting cases stating the same). Further, we have said that "[w]here the defendant admits a violation of a safety statute, negligence per se is established and the issue of liability should not be submitted to the jury." *Id.* ¶ 27, 756 N.W.2d at 561. The terms "negligence" and "liability" have been used loosely in these prior cases. "Negligence" can be used in at least two different ways. It may be referring to "the failure to exercise the standard of care that a reasonably prudent person would have exercised in a similar situation." *Negligence*, Black's Law Dictionary (10th ed. 2014). It may also refer to the "tort grounded in this failure, usually expressed in terms of the following elements: duty, breach of duty, causation, and damages." *Id.* These prior statements should not be understood to mean that all of the elements of negligence have been met once negligence per se is established. "Negligence as a matter of law" or "Negligence per se" is not necessarily referring to the four elements constituting the tort of negligence.

[¶12.]     Although Stensland argues that the element of causation was not an issue in this case, the County disputed that its failure to comply with the MUTCD was the proximate cause of Stensland's injury. A majority of the trial concerned which signs were in place, the location of those signs, and the reflective nature of those signs at night. The County contended that the signs it used were sufficient to put Stensland on notice of the washout even though they were not the type required

by the MUTCD. The jury also heard Stensland admit that his father warned him that there may be road work so Stensland might need to take a detour. Although Stensland denied that he knew of the washout, the jury heard a portion of his deposition where he stated that he had been told that a washout existed. Stensland further admitted that, when Robinson was taking him to meet his father in Ralph, Robinson "swerved around" a fallen "Road Closed" sign at the intersection of CR 734 and Ralph Road. Stensland came through that intersection prior to the accident, but he testified that he did not see the sign when he came from the other direction because it was in an approach to the side of the road. The jury saw pictures taken the next day that showed the sign lying down in the middle of the road. Viewing the evidence and testimony in a light most favorable to the verdict, there is evidence that supports the verdict. *See Huether*, 2014 S.D. 93, ¶ 16, 857 N.W.2d at 860. The court did not abuse its discretion by denying the motion for judgment as a matter of law.

[¶13.] Stensland next argues that there was insufficient evidence of contributory negligence and assumption of the risk and therefore the court should have granted judgment as a matter of law against the County on those issues. Further, he contends that the jury instructions on contributory negligence and assumption of risk were erroneously given, which resulted in prejudice.

[¶14.] "Questions of negligence, contributory negligence, and assumption of the risk are for the jury in all but the rarest of cases so long as there is evidence to support the issues." *Janis*, 2010 S.D. 27, ¶ 7, 780 N.W.2d at 500 (quoting *Rowland v. Log Cabin, Inc.*, 2003 S.D. 20, ¶ 14, 658 N.W.2d 76, 80). Evidence described in

paragraph 11 supports the instructions given for contributory negligence and assumption of the risk. Because a general verdict form was used, we have no way of knowing whether the jury based its decision on the issue of causation, contributory negligence, or assumption of the risk. However, the jury could have properly found that the failure of the County to place signs that physically conformed to the MUTCD requirements was not the proximate cause of the injury, or that Stensland was contributorily negligent, or that he assumed the risk. We affirm the jury's verdict.

[¶15.]    Because we affirm, we do not reach the County's issue on notice of review related to what obligations the County had under SDCL 31-28-6.

[¶16.]    GILBERTSON, Chief Justice, and ZINTER, WILBUR, and KERN, Justices, concur.