#29836-a-MES
**2023 S.D. 20**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

\* \* \* \*

HARLAN KIRWAN and
PANDORA'S BOX, LLC d/b/a
GUNSLINGER SALOON,                              Appellants,

    v.

CITY OF DEADWOOD, DEADWOOD
HISTORIC PRESERVATION
COMMISSION, DEADWOOD
HISTORIC DISTRICT COMMISSION,        Appellees.

\* \* \* \*

APPEAL FROM THE CIRCUIT COURT OF
THE FOURTH JUDICIAL CIRCUIT
LAWRENCE COUNTY, SOUTH DAKOTA

\* \* \* \*

THE HONORABLE MICHELLE K. COMER
Judge

\* \* \* \*

KIMBERLY PEHRSON of
Thomas Braun Bernard
    & Burke, LLP
Rapid City, South Dakota                       Attorneys for appellants.


QUENTIN L. RIGGINS
MARIA CRITCHLOW of
Gunderson, Palmer, Nelson
    & Ashmore, LLP
Rapid City, South Dakota                       Attorneys for appellees.

\* \* \* \*

ARGUED
AUGUST 31, 2022
OPINION FILED **04/26/23**

#29836

SALTER, Justice

[¶1.]    Harlan Kirwan sought a certificate of appropriateness from the Deadwood Historic District Commission to conduct renovations on a building he owns located in the Deadwood Historic District.  After a hearing, the Historic District Commission voted to deny the certificate.  Kirwan appealed to the circuit court, which affirmed the decision.  He now appeals to this Court, and we affirm.

## Facts and Procedural History

[¶2.]    To further our State's interest in the preservation of historic property, the Legislature has authorized "[a] county or municipality" to "establish by ordinance one or more historic districts within the area of its jurisdiction."  SDCL 1-19B-38.  As part of this authorization, the Legislature has also required the formation of a historic district commission "[w]henever an historic district is established[.]"  *Id.*  A historic district commission is charged with, among other things, approving or denying certificates of appropriateness, which are necessary to alter the "exterior portion of any building" located within a historic district.  SDCL 1-19B-42.  "If the Historic District Commission determines that the proposed . . . alteration . . . is appropriate, it shall forthwith approve such application and shall issue to the applicant a certificate of appropriateness."  SDCL 1-19B-48.

[¶3.]    Using its statutory authority, the City of Deadwood has established the Deadwood Historic District (the Historic District), which includes the property located in its downtown area.  The City has also created the Deadwood Historic

-1-

District Commission (the Commission), which appears to have seven members.[1]

*See* SDCL 1-19B-40 (authorizing historic district commissions to have three to seven

members). The Commission members are assisted by a historic preservation officer.

To guide the Commission in making the determination of whether to issue a

certificate of appropriateness, the City has enacted Deadwood City Ordinance

(DCO) 17.68.050, which provides a number of general considerations, or factors, as

well as specific factors for new construction, exterior alteration, and demolition of

buildings within the Historic District.

[¶4.]        Kirwan owns the Gunslinger Saloon located in the Historic District. It

functions as a combination clothing store and bar, much like it has at various times

since 1879 when the building was originally constructed.[2] In May 2020, Kirwan

decided to renovate the exterior of the building by covering the existing facade with

vertical slats of rough-hewn wood made from pine trees harvested from the Black

Hills. The existing facade that Kirwan covered was not original to the building, but

it was a variation of the initial design, which consisted of painted horizontal wood

lap siding. Kirwan later stated that he thought the rough-hewn design was more

aesthetically pleasing than the painted siding and better reflected the "boomtown"

look of the buildings in Deadwood prior to 1879.

---

1.    The imprecision is a consequence of the relative completeness of the record
      and the fact that it appears that two similar-sounding commissions—the
      Deadwood Historic District Commission and the Deadwood Historic
      Preservation Commission—conduct joint meetings and may well have the
      same members. *See infra* note 5.

2.    A fire destroyed much of the town of Deadwood in the fall of 1879. The
      building now occupied by the Gunslinger Saloon was constructed after the
      fire.

[¶5.] Despite the obligation to seek permission for the modification before undertaking it, Kirwan did not apply for a certificate of appropriateness from the Commission until *after* renovating the Gunslinger Saloon's facade. *See* SDCL 1-19B-42 (requiring a certificate of appropriateness prior to altering a building within a historic district). The Commission denied his belated application and ordered Kirwan to remove the pine wood facade.[3]

[¶6.] After the denial of the certificate, Kirwan and his attorney met with Deadwood Historic Preservation Officer Kevin Kuchenbecker in an effort to discuss an acceptable plan for the renovation. At the meeting, Kuchenbecker provided Kirwan with the earliest known photographs of the Gunslinger Saloon building, dating back to the early 1900s. Kuchenbecker advised Kirwan that the rough-hewn pine wood design may have been characteristic of the "boomtown" era, but it was inconsistent with the more modern design of the buildings that were constructed after 1879. In this regard, the photographs reveal that the building's original look was more consistent with the existing, painted lap siding facade. Kuchenbecker also offered Kirwan several alternative renovation concepts that would not alter the important historical details of the facade.

---

3. Kirwan received a letter advising him of the denial and stating he had a right to seek review in circuit court within 30 days, but he did not appeal what may well have been a final administrative action by the Commission. The parties have not raised a question of appellate jurisdiction in this appeal, which involves a later and essentially identical application, and the jurisdictional issue is complicated by the fact that the procedural rules governing appeals from historic district commissions are uncertain, as explained further below.

#29836

[¶7.] Despite this, Kirwan applied for a new certificate of appropriateness in February 2021, once again requesting permission to cover the existing facade with pine wood, as he had in his initial application. Prior to the Commission's hearing on the application, Kuchenbecker submitted a "Staff Report" to the Commission in which he described Kirwan's proposed renovations.

[¶8.] The Staff Report chronicled the history of the Gunslinger Saloon building and described the facade design on similar buildings of the same era. Kuchenbecker ultimately recommended that the application be denied. Though it did not expressly cite DCO 17.68.050, the Staff Report did state and apply several of the factors contained in the ordinance. The Staff Report also referenced "Standards for Rehabilitation" issued by the United States Department of the Interior, *see* 36 C.F.R. § 67.7.[4] Based at least partially on the Department of Interior standards, Kuchenbecker concluded that "the proposed work . . . does encroach upon, damage or destroy a historic resource and has an adverse effect on the character of the building[.]"

[¶9.] At the application hearing, Kuchenbecker noted that at the time the Gunslinger Saloon building was constructed, "the boomtown architecture, the rough sawn lumber storefronts and the log cabins and canvas tents [had] disappeared." He reiterated the importance of "maintain[ing] the traditional site layout and material of [the building]" and cautioned that "[a]ltering these traditional elements

---

4. All property within the downtown area of the City was designated as a National Historic Landmark District by the Department of Interior in 1989. *See* National Register of Historic Places, https://npgallery.nps.gov/GetAsset/669730fb-5825-4ba1-b11d-2a476357de9d (lasted visited January 18, 2023).

by introducing non-painted materials and stylistic elements as proposed" would be incompatible with the building's historic character. Kuchenbecker also reviewed the Standards of Rehabilitation with the Commission and stated that the balance of those factors weighed in favor of denying the permit.

[¶10.] Through his counsel, Kirwan argued that the rough-hewn facade was representative of the buildings that existed in Deadwood circa 1875—when the town was founded. Kirwan claimed that the technique used for fashioning the rough-hewn lumber was consistent with the tools used by early settlers of the town, and rather than reflecting historical inaccuracy, he believed the new facade would "help to bring [Deadwood's] history to life[.]"

[¶11.] The Commission questioned Kuchenbecker about the evolution of the building's design and architecture. The discussion focused principally on a 1913 photograph of the Gunslinger Saloon building attached to the Staff Report. According to Kuchenbecker, the photograph reflected the oldest evidence of the building's design and depicted "the horizontal lap siding that it has today."

[¶12.] Several members of the Commission expressed concern about altering the building as Kirwan proposed. One member stated, "I think we have to be really careful because this [sic] are our oldest buildings. . . . I think changing it is a really big deal[.]" Another member suggested "that if any changes were to be made that it should be taken back to its more original look, not add something that's new that

was never there. I don't think that's the purpose of a historic district." The Commission ultimately voted unanimously to deny the application.[5]

[¶13.] Kirwan appealed the Commission's decision to the circuit court. Attached to the Commission's appellate brief to the circuit court was a previously unfiled affidavit of Kuchenbecker, in which he provided the details of his discussion with Kirwan and his attorney after the denial of Kirwan's original application. In his reply brief, Kirwan objected to Kuchenbecker's affidavit, claiming it had been improperly submitted.

[¶14.] The circuit court conducted a hearing and heard argument on the Commission's decision to deny the permit as well as on the submission of Kuchenbecker's affidavit. As to the affidavit, counsel for the Commission explained that the affidavit was necessary to respond to Kirwan's argument on appeal that the Commission had violated an ordinance by not meeting with him prior to a hearing on his application. The court accepted the Commission's explanation and admitted Kuchenbecker's affidavit.

---

5. Kirwan notes that it is unclear which administrative body heard and denied his application—the Deadwood Historic Preservation Commission or the Deadwood Historic District Commission. He points specifically to the letter notifying him of the denial, which uses the "Historic Preservation Commission" letterhead but states the "Historic District Commission" was the body that denied the application. Though the difference between the two may sound semantic, it is not. Our statutes recognize that each is a distinct body with distinct powers. *Compare* SDCL 1-19B-42 (authorizing a historic district commission to hear and decide applications for certificates of appropriateness), *with* SDCL 1-19B-2 (authorizing a county or municipality to "establish an historic preservation commission, to preserve, promote, and develop the historical resources of such county or municipality"). However, Kirwan does not allege the lack of clarity furnishes a basis to challenge the denial of the certificate of appropriateness.

[¶15.] Regarding the denial of his application itself, Kirwan's principal argument was that the Commission failed to comply with DCO 17.68.050. The ordinance lists eight "general factors" that focus upon the property or "resource," its historic significance, and the nature of the proposed alteration. Additional specific factors for new construction and exterior alterations emphasize the need to conform contemporary changes with the historic character of the property and the area. Because DCO 17.68.050 states that "[t]he historic district . . . commission[ ] shall use the following criteria and established design review guidelines in granting or denying certificates of appropriateness[,]" Kirwan claimed that the Commission's decision cannot be sustained because it did not expressly reference each of the factors. The Commission compounded the problem, Kirwan argued, by relying upon similar factors promulgated by the Department of Interior.

[¶16.] Kirwan made a separate argument alleging that the Commission's written notice of its decision to deny his application for a certificate of appropriateness failed to comply with the technical requirements of SDCL 1-19B-49. The statute provides that "the commission shall place upon its records the reasons for such determination and shall forthwith notify the applicant of such determination, furnishing the applicant an attested copy of its reasons therefor and its recommendations, if any, as appearing in the records of the commission." *Id.*

[¶17.] Kirwan was present for the Commission's consideration of his application and the vote denying it, and he later received a letter from Kuchenbecker that stated "based upon the guidance found in DCO 17.68.050, the exterior alteration proposed is incongruous with the historical, architectural,

archeological or cultural aspects of the district[.]" In Kirwan's view, however, Kuchenbecker's letter was merely a "form letter" unsupported by particular reasons for the denial of his application.

[¶18.] Finally, Kirwan challenged the sufficiency of the Commission's factual findings, alleging they were not supported by "substantial evidence." Specifically, he claimed the 1913 photograph did not accurately depict the style of the building in 1879. Kirwan also argued that the Commission overlooked the fact that his proposed renovations would not impact other historical exterior features, including the recessed storefront entry, the use of wood as the primary siding material, and the dimensions of the display windows.

[¶19.] The circuit court issued an oral decision at the conclusion of the hearing in which it affirmed the Commission's decision. Applying a substantial evidence standard of review, the court determined that the Commission considered the appropriate criteria and that its factual findings were adequately supported by the record.

[¶20.] Kirwan now appeals to this Court, raising several issues, which we have restated as follows:

> 1. Whether the Commission complied with applicable Deadwood city ordinances.
>
> 2. Whether the Commission complied with SDCL 1-19B-49.
>
> 3. Whether the Commission's stated reasons for denying Kirwan's application for a certificate of appropriateness were clearly erroneous.

## Analysis and Decision

### *Standard of Review*

[¶21.]     We review issues of statutory interpretation as questions of law under our de novo standard of review. *Jensen v. Kasik*, 2008 S.D. 113, ¶ 4, 758 N.W.2d 87, 88 (citation omitted). The same is true for interpreting ordinances. *Brant Lake Sanitary Dist. v. Thornberry*, 2016 S.D. 66, ¶ 5, 886 N.W.2d 358, 360. Determining the appropriate standard of review for the Commission's factual findings is more difficult.[6]

[¶22.]     Although the Legislature has expressly authorized appeals from the decisions of historic district commissions, it has not prescribed guidance for procedural rules or the applicable standard of review. *See* SDCL 1-19B-50 ("Any applicant aggrieved by a determination of the Historic District Commission may appeal to the circuit court for the county in which the land concerned is situated."). The parties and the circuit court have all operated under the view that the Commission's factual findings should be tested against a "substantial evidence" standard, citing our decision in *Olson v. City of Deadwood*, 480 N.W.2d 770, 774 (S.D. 1992). But this view is problematic, as a close reading of *Olson* reveals.

[¶23.]     In *Olson*, we reviewed the zoning decision of a municipal adjustment board—not a determination by a historic district commission—pursuant to a writ of

---

6.     Kirwan suggests that we are reviewing only the decision of the circuit court, but we generally regard the circuit court as an intermediate appellate court in administrative appeals. *See e.g.*, *In re Tinklenberg*, 2006 S.D. 52, ¶ 11, 716 N.W.2d 798, 801 ("Our standard of review of an administrative appeal is the same as that of the circuit court.").

certiorari—not a traditional administrative appeal. These critical differences render *Olson* inapposite on its face.

[¶24.] Perhaps adding to the confusion regarding *Olson*'s applicability here is the fact that our formulation of the certiorari standard in *Olson* was sourced to dicta in our 1954 decision in *Graves v. Johnson*, 75 S.D. 261, 266, 63 N.W.2d 341, 344 (1954), which incorporated the substantial evidence rule—a concept no longer reflected in our more contemporary view that "[c]ertiorari cannot be used to examine evidence for the purpose of determining the correctness of a finding[,]" *Dunham v. Lake County Commission*, 2020 S.D. 23, ¶ 11, 943 N.W.2d 330, 334 (quoting *Hines v. Board of Adjustment of Miller*, 2004 S.D. 13, ¶ 10, 675 N.W.2d 231, 234). Instead, judicial inquiry in certiorari cases is limited "to whether the [tribunal] had jurisdiction over the matter and whether it pursued in a regular manner the authority conferred upon it." *Id.* ¶ 10, 943 N.W.2d at 333 (quoting *Wedel v. Beadle Cnty. Comm'n*, 2016 S.D. 59, ¶ 11, 884 N.W.2d 755, 758).

[¶25.] By providing a statutory basis to "appeal" decisions of a historic district commission to circuit court in SDCL 1-19B-50, it seems the Legislature intended a more conventional type of review—not the limited review afforded by the certiorari process. But the question concerning the correct standard of review persists.

[¶26.] In their appellate submissions, both parties continue to apply the substantial evidence test for the Commission's factual findings as they did before the circuit court. Curiously, though, Kirwan has also identified the clearly erroneous standard set out in our Administrative Procedures Act (APA) at SDCL 1-

26-36 as the correct standard for reviewing factual findings.[7] But we are not convinced the APA applies here because the Commission does not appear to be an agency.

[¶27.] The APA's definition of an "agency" generally includes executive branch departments, boards, and commissions, but it does not include municipalities unless they operate under a home rule charter and have "adopted [their] own administrative appeals process, whose final decisions, rulings, or actions rendered by that process are subject to judicial review pursuant to [SDCL chapter 1-26]." SDCL 1-26-1(1). Nothing in the record suggests that the Commission satisfies the definition of an agency, and the parties have not asserted otherwise.

[¶28.] Still, Kirwan's invocation of SDCL 1-26-36 finds some support in our *In re B.Y. Development, Inc.* decision, though perhaps not sustainable support. *See* 2000 S.D. 102, 615 N.W.2d 604. In *B.Y. Development,* we cited SDCL 1-26-36 in our standard of review discussion relating to a decision of the similar, but distinct, Deadwood Historic Preservation Commission. *Id.* ¶ 6, 615 N.W.2d at 607–08. But we did so not because the Deadwood Historic Preservation Commission was an agency—we held it was not—but rather because a separate statute, not implicated here, required the application of SDCL 1-26-36. *See* SDCL 1-19A-11.1 (authorizing

---

7. The provisions of SDCL 1-26-36 state in relevant part, that when reviewing an agency decision,

> [t]he court may reverse or modify the [agency's] decision if substantial rights of the appellant have been prejudiced because the administrative findings, inferences, conclusions, or decisions are: . . . (5) Clearly erroneous in light of the entire evidence in the record; or (6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.

appeals "pursuant to the provisions of chapter 1-26" for decisions of a political subdivision's governing body relating to projects that impact "historic property included in the national register of historic places or the state register of historic places").[8]

[¶29.] We make one additional comment about Kirwan's invocation of both the substantial evidence and the clearly erroneous standards of review: they are not interchangeable. The clearly erroneous standard is different than the substantial evidence rule, as we have recognized. *See Sopko v. C & R Transfer Co.*, 1998 S.D. 8, ¶ 7 n.2, 575 N.W.2d 225, 228 n.2 ("On the deference spectrum, clearly erroneous fits somewhere between de novo (no deference) review and substantial evidence (considerable deference) review." (quoting 1 S. Childress & M. Davis, *Federal Standards of Review* § 15.03 at 15–17 (2d ed. 1992)).[9]

[¶30.] Though the standard used would not be outcome determinative here, we do think it is important to determine a standard of review for this class of administrative appeals. Doing so will provide clarity for parties and circuit courts in the absence of a specific statutory standard of review. Drawing upon the standard widely used to review factual findings in administrative appeals under

---

8. Nothing in SDCL 1-19B-50 or any other provision of chapter 1-19B specifically incorporates the APA, as SDCL 1-19A-11.1 does.

9. Apropos of nothing perhaps, but SDCL 1-26-36 did, at one time, require factual findings of administrative agencies to be reviewed under the substantial evidence standard, but that was prior to a 1978 amendment to the statute. *See Sopko*, 1998 S.D. 8, ¶ 7, 575 N.W.2d at 229; *see also In re Ehlebracht*, 2022 S.D. 46, ¶¶ 24–26, 978 N.W.2d 741, 749–50 (noting the distinction between the substantial evidence and clearly erroneous standards and citing *Sopko*).

SDCL 1-26-36 and, more broadly, in the common law, we conclude that a clearly erroneous standard of review is justified as a prudential matter. The deferential clearly erroneous standard is a familiar and acceptable means by which courts routinely review factual findings. The standard also serves to acknowledge not only a fact-finder's advantage for weighing evidence, but also the limitations of reviewing courts. Using the clearly erroneous standard, we will reverse only "[i]f after careful review of the entire record we are definitely and firmly convinced a mistake has been committed[.]" *Sopko*, 1998 S.D. 8, ¶ 6, 575 N.W.2d at 228.

### *Compliance with Deadwood City Ordinances*

[¶31.] The provisions of DCO 17.68.030 recognize the creation of the Commission.[10] The ordinance also establishes requirements for members of the Commission and its authority "[t]o issue or deny the issuance of certificates of appropriateness[.]" As we indicated above, a separate ordinance, DCO 17.68.050, lists "general factors" that the Commission "shall use" in its determination of an application for a certificate of appropriateness:

1. Architectural design of the resource and proposed alteration;
2. Historical significance of the resource;
3. General appearance of the resource;
4. Condition of the resource;
5. Materials composing the resource;
6. Size of the resource;
7. The relationship of the above factors to, and their effect upon the immediate surroundings and upon the district as a whole and its architectural and historical character and integrity; and
8. The location and visibility of the alteration and resource.

---

10. The text of DCO 17.68.030 does not, itself, establish the Deadwood Historic District or the Commission, but acknowledges that it was created by a separate ordinance not implicated here.

[¶32.]     Also listed in DCO 17.68.050 are criteria for the Commission to consider when the certificate of appropriateness application involves "exterior alteration":

1. All exterior alterations to a building, structure, object, site or landscape feature shall be compatible with the resource itself and other resources with which it is related. The original design of a building, structure, object or landscape feature shall be considered in applying these standards.
2. Exterior alterations shall not affect the architectural character or historic quality of a resource and shall not destroy the significance of resource sites.

[¶33.]     Kirwan claims that DCO 17.68.050 requires the Commission to explicitly make findings concerning all the "general" and "exterior alteration" factors when considering a certificate of appropriateness. This much is clear from a plain reading of the ordinance, Kirwan argues, because the ordinance uses the mandatory verb "shall" followed by a syndetic list. In Kirwan's view, the Commission failed to follow the directive of the ordinance because "the criteria from DCO 17.68.050 were never formally discussed or considered by either the Historic District Commission or in the Staff Report."

[¶34.]     We agree that the use of the verb "shall" indicates a clear command that the Commission must use the enumerated factors listed in the ordinance when it considers an application for a certificate of appropriateness. *See Discover Bank v. Stanley*, 2008 S.D. 111, ¶ 21, 757 N.W.2d 756, 762 ("[W]hen 'shall' is the operative verb in a statute, it is given 'obligatory or mandatory' meaning." (citation omitted)). However, Kirwan's argument that this language means the Commission must consider every factor in all instances, even when one does not apply, and issue

discrete, corresponding factual findings is not supportable under a more comprehensive reading of the ordinance.

[¶35.]       For example, DCO 17.68.050 also contains six standards for "[n]ew construction" and seven for "[d]emolition" of a building within the Historic District, none of which are implicated here.  Under Kirwan's reading of the ordinance, a legally sound decision by the Commission must include explicit findings on each of those factors regardless of whether the applicant is contemplating new construction or demolition.[11]  But this interpretation has textual and practical impediments.

[¶36.]       As a textual matter, the ordinance itself does not require the Commission to issue findings of fact at all.  Of course, the presence of factual findings can assist with meaningful appellate review, but even in proceedings in which findings are required, their absence is not necessarily fatal where the record will otherwise support review.  *See Batchelder v. Batchelder*, 2021 S.D. 60, ¶ 22, 965 N.W.2d 880, 886 (holding that even where findings are required, "an appellate court may decide the appeal without further findings if it feels it is in a position to do so" (citation omitted)).[12]

---

11.    Kirwan himself did not address each of the individual factors set out in DCO 17.68.050 in his application.

12.    Kirwan also claims that the *circuit court* failed to make findings of fact, but this argument overlooks the fact that its principal authority, SDCL 1-26-36, does not apply, in its entirety, to decisions of a historic district commission, as we noted above.  And, in any event, SDCL 1-26-36's requirement that "[a] court shall enter its own findings of fact and conclusions of law," only applies if the court does not affirm the agency's decision.  *See Amundson v. S.D. Bd. of Pardons & Paroles*, 2000 S.D. 95, ¶ 29, 614 N.W.2d 800, 806 (holding that under SDCL 1-26-36, the circuit court is required to "enter its own findings of

(continued . . .)

[¶37.]     In addition, we do not read DCO 17.68.050's language—"[the Commission] shall use the following criteria"—as an unyielding litany of factors that must be considered even where they are not implicated.  Instead, the ordinance serves as a directive to the Commission to use the factors listed to guide the decision-making process and ensure that the ordinance is evenly applied.  For this reason, the mandatory phrase of DCO 17.68.050 does not inflexibly enjoin the Commission to consider inapplicable factors.  Therefore, we must determine whether the Commission considered *the relevant* factors in deciding Kirwan's application, and we conclude it did.

[¶38.]     The Staff Report, from which Kuchenbecker read large portions at the Commission hearing, begins with two substantive paragraphs discussing the "historic significance of the resource" and the "architectural design of the resource and proposed alterations"—both factors which are specifically listed in DCO 17.68.050.  The report also analyzes at length the "general appearance of the resource" factor of DCO 17.68.050, noting the Gunslinger Saloon building "consists of very simple detailing on the store front and is of traditional design." Kuchenbecker's report also discusses the ordinance's "materials composing the resource" factor by indicating the building is currently "a wooden structure" and that the proposed renovations will result in a new, wood facade.

[¶39.]     The report further discusses the "exterior alteration" factors, commenting on the building's "original design," "architectural character," and

_____

(. . . continued)
       fact and conclusions of law when reversing or modifying an administrative
       agency's decision").

"historic quality." Additionally, at the conclusion of the hearing, the Commission passed a motion that found "[b]ased upon guidance found in DCO 17.68.050 . . . the exterior alteration proposed is incongruous with the historical, architectural, archaeological, or cultural aspects of the district." For these reasons, we cannot accept Kirwan's assertion that "the criteria in DCO 17.68.050 was never discussed." Under Kirwan's view, we would vacate the Commission's denial and remand the case for the unnecessary consideration of factors relating to new construction and demolition, which unquestionably do not apply.

[¶40.] Kirwan acknowledges that the "Commission may have stumbled into addressing some of the required factors through individual comments and questions[,]" but he appears to find fault with the portion of the three-page Staff Report that applied specific federal regulatory standards promulgated by the Department of Interior for properties included within National Historic Landmark Districts. *See* 36 C.F.R. § 67.7(b) (listing ten standards for "specific rehabilitation projects"). However, Kirwan overlooks the fact that these standards also emphasize retaining a property's historic elements and discourage alterations that compromise the historic characteristics of the property, as DCO 17.68.050 does. *See e.g.*, 36 C.F.R. § 67.7(b)(5) ("Distinctive features, finishes, and construction techniques or examples of craftsmanship that characterize a historic property shall be preserved."); 36 C.F.R. § 67.7(b)(9) ("New additions, exterior alterations, or related new construction shall not destroy historic materials that characterize the property."). Further, despite his criticism of the Commission's reference to these

federal standards, Kirwan does not directly claim their use can provide a basis for reversal.[13]

[¶41.] Under the circumstances, the Commission hearing appears to have been a purposeful effort to apply the relevant factors in the ordinance and reach a conclusion that it believed to be focused on the preservation of historic property. Given the record before us, we conclude the Commission complied with the applicable Deadwood city ordinances.

*Compliance with SDCL 1-19B-49*

[¶42.] The text of SDCL 1-19B-49 provides:

> If the Historic District Commission determines that a certificate of appropriateness should not be issued, the commission shall place upon its records the reasons for such determination and shall forthwith notify the applicant of such determination, furnishing the applicant an attested copy of its reasons therefor and its recommendations, if any, as appearing in the records of the commission.

[¶43.] Kirwan claims the Commission did not follow the requirements in the statute because it did not "place upon its records the reasons" for its denial or "furnish[ ] the applicant an attested copy of its reasons[.]" We do not believe either of these arguments is sustainable. As to the former, the reasons for the denial of Kirwan's application appear clearly in the record generated by the Commission as

---

13. Though not central to our discussion here, the use of the federal standards may be justified by the fact that the Gunslinger Saloon appears to be included in an area identified by the City as a "historic overlay zone" that is coterminous with the federally designated Deadwood National Historic Landmark District. But regardless, the degree of overlap between the federal standards and the criteria listed in DCO 17.68.050 is so extensive that we are unable to determine a meaningful difference between the two, at least insofar as the circumstances of this case are concerned. Counsel for Kirwan was similarly unable to identify any fundamental differences at oral argument.

evidenced by the transcript of the hearing and the Staff Report prepared by Kuchenbecker and considered by the Commission.

[¶44.]    As to the notice-of-reasons requirement, Kirwan claims that "[t]he form letter from Mr. Kuchenbecker does not satisfy" SDCL 1-19B-49.  But Kirwan does not cite any authority for this proposition, and we think the letter, dated March 11, 2021, and signed by Kuchenbecker, expresses precisely the reason the application was denied: "based upon the guidance found in DCO 17.68.050, the exterior alteration proposed is incongruous with the historical, architectural, archaeological or cultural aspects of the district[.]"[14]

[¶45.]    Kirwan's observation that the Commission did not comply with SDCL 1-19B-49's requirement to provide him with an "*attested* copy" of the reasons for its denial is factually accurate.  (Emphasis added.)  Although Kirwan's notice of the denial was signed by Kuchenbecker, it did not contain an attestation, which generally requires a person to bear witness, or testify, or affirm a document to be true or genuine.  *See Attest*, *Black's Law Dictionary* (11th ed. 2019).

[¶46.]    The lack of an attestation, however, does not, itself, require reversal. Kirwan has not claimed that his substantial rights were affected in any way by the lack of attestation.  Nor has he claimed that the denial letter from Kuchenbecker was not genuine or that it did not correctly reflect the Commission's action.  Indeed,

---

14.    This is similar to the motion that the members of the Commission approved at the hearing to consider Kirwan's application for a certificate of appropriateness.  He suggests we should view this language with skepticism because it was prepared for the Commission members by its staff.  But Kirwan fails to explain how this fact would render the Commission's ultimate vote unauthorized, or even how the practice is all that unusual.

Kirwan and his attorney were personally present at the Commission's meeting concerning his second application and participated in the Commission's consideration. *See Mimick v. U.S.*, 952 F.2d 230, 232 (8th Cir. 1991) (holding that administrative summonses that failed to comply with a federal statutory attestation requirement were, nevertheless, enforceable where there was "[n]o evidence . . . that any of the summoned parties hesitated to act or lost substantial rights because of the absence of an attestation . . . [and] the copies served [were] true and correct copies of the originals and lack only the attestation").

[¶47.]     In addition to his claims regarding technical compliance with SDCL 1-19B-49, Kirwan also argues more broadly that the Commission failed to sufficiently develop a factual record that would provide an opportunity for meaningful review. We view the record differently. The discussion reflected in the Commission meeting transcript and the material considered by the Commission, including the Staff Report, provide a clear and unmistakable basis on which to conduct appellate review, and we perceive no difficulty in this regard.

***Denial of the Certificate of Appropriateness***

[¶48.]     Kirwan notes that the Commission's basis for denying his application was that his proposal was "incongruous with the historical, architectural, archeological or cultural aspects of the district" and argues that these stated reasons were not supported by "substantial evidence" and reflected only "vague reservations" about the appropriateness of Kirwan's proposal. But as we have explained above, we review these factual findings by the Commission for clear error, and our review of the record reveals no such error. The Commission was correctly

oriented to the appropriate factors, and its decision denying Kirwan's application for a certificate of appropriateness is supported by the record.

[¶49.] The transcript from the hearing reveals that the Commission engaged in a substantive review of Kirwan's application, which centered on his principal claim that using rough-hewn pine on the exterior of his building would advance the historical character of the building. But Kirwan's bare claim lacked factual support, and the members of the Commission received contrary evidence in the form of photographs and the statements of the historic preservation officer, Kuchenbecker. He offered an unrebutted explanation that "this building was built in 1879, and so the boomtown architecture, the rough sawn lumber storefronts and the log cabins and canvas tents [had] disappeared[,]" along with his ultimate opinion that Kirwan's "proposal does not retain the characteristics that define this building."

[¶50.] Kirwan argues that the Commission overlooked the fact that other features of the facade would be unaffected by his proposal and relied too heavily upon the 1913 photograph. However, the record makes clear that the Commission was keenly aware that certain features of the Gunslinger Saloon building's facade would remain unchanged under Kirwan's proposal, but regardless, both arguments relate to the weight of the evidence considered by the Commission—a topic distinctly ill-suited for appellate review.[15] *See Huether v. Mihm Transp. Co.*, 2014

---

15. Kirwan also argues that the circuit court should not have enlarged the administrative record by allowing an affidavit from Kuchenbecker that was not presented to the Commission. The affidavit related to whether Kuchenbecker satisfied a requirement to meet with Kirwan prior to the hearing on the application, but compliance with a "meet and confer" obligation is not identified as an issue on appeal. Accordingly, the issue does

(continued . . .)

S.D. 93, ¶ 30, 857 N.W.2d 854, 864 ("[T]his Court will not usurp the [factfinder]'s function in resolving conflicts in the evidence, weighing credibility, and sorting out the truth." (citations omitted)).

## Conclusion

[¶51.] The Commission complied with DCO 17.68.050 and properly considered the relevant factors from the ordinance when it considered Kirwan's application. The Commission's ultimate decision denying the application either complied with the technical requirements of SDCL 1-19B-49 or the noncompliance did not impact Kirwan's substantial rights. Finally, the Commission's factual determinations underlying its decision to deny the certificate of appropriateness are supported by the record and were therefore not clearly erroneous. For these reasons, we affirm.

[¶52.] JENSEN, Chief Justice, and KERN, DEVANEY, and MYREN, Justices, concur.

---

(. . . continued)
  not appear to represent a live, justiciable controversy, and we decline to
  consider it.